FILED

4:08 pm, 10/29/26

Margaret Botkins
Clerk of Court



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

**Joseph Fain,**

Plaintiffs,

v.

**SODEXO, INC.,**

Defendants.

Case No. 26-cv-00334-SWS

**COMPLAINT FOR EMPLOYMENT DISCRIMINATION AND RETALIATION**

**JURY TRIAL DEMANDED**

Plaintiff Joseph Fain, proceeding without an attorney, alleges as follows:

## I. Nature of the Action

1. This action arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq., and 42 U.S.C. § 1981.

2. Plaintiff, an African American man, alleges that Defendant Sodexo, Inc. discriminated against him because of his race and color and retaliated against him for opposing unlawful discrimination.

3. The challenged adverse actions include: (a) discipline imposed in connection with an incident on approximately October 2, 2024, and formal discipline when Plaintiff returned approximately October 9, 2024; (b) involuntary unpaid leave beginning approximately December 10, 2024, one week after Plaintiff complained of discrimination; and (c) Defendant's subsequent exclusion of Plaintiff from an employment transition to a subcontractor, which resulted in the loss of his employment.

4. These events were the subject of EEOC Charge Nos. 541-2025-02233 and 531-2025-03365. Plaintiff received the EEOC's right-to-sue notices on July 31, 2026, and timely filed this action. True and correct copies of the EEOC Form 5A for Charge No. 541-2025-02233 and the EEOC Form 5A for Charge No. 531-2025-03365 are attached as Exhibits A and B. True and correct copies of the Notices of Right to Sue for Charge Nos. 541-2025-02233 and 531-2025-03365 are attached as Exhibits C and D.

5. Plaintiff seeks back pay, front pay or reinstatement, lost benefits, compensatory damages, punitive damages where authorized, equitable relief, interest, costs, and other relief permitted by

law. Plaintiff asserts overlapping statutory grounds but does not seek double recovery for the same injury.

6. The claims asserted herein are limited to the employment practices identified in the EEOC charges and the factual allegations of this Complaint. Plaintiff does not assert claims based on events outside the scope of those charges except to the extent permitted as background evidence or under 42 U.S.C. § 1981.

## II. Jurisdiction and Venue

7. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the claims arise under federal law, and under 28 U.S.C. § 1343(a)(4).

8. Venue is proper in the District of Wyoming under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b)(2). The unlawful employment practices occurred in Wyoming, where Plaintiff worked and would have continued working but for Defendant's conduct.

9. Defendant is subject to personal jurisdiction in Wyoming. It conducted the employment operations at issue and employed Plaintiff at the Wyoming worksite where the challenged conduct occurred.

## III. Parties

10. Plaintiff Joseph Fain is an African American man who worked for Defendant as a Food Service Worker.

11. Defendant Sodexo, Inc. is the employer identified in Plaintiff's EEOC charges and in the EEOC's July 31, 2026 correspondence. Its business address listed in the administrative records is 915 Meeting Street, Suite 1400, North Bethesda, Maryland 20852.

12. At all relevant times, Defendant employed fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year and was an employer engaged in an industry affecting commerce within the meaning of Title VII.

13. Plaintiff performed work for Defendant in exchange for wages and benefits, creating a contractual employment relationship protected by 42 U.S.C. § 1981.

14. The supervisors, managers, and Human Resources personnel described below acted on Defendant's behalf and within the scope of their authority.

## IV. Administrative Proceedings and Timeliness

15. Plaintiff submitted EEOC Form 5A materials and formal charges concerning the October 2024 discipline (Charge No. 541-2025-02233) and the December 2024 unpaid leave and subsequent loss of employment (Charge No. 531-2025-03365).

16. Plaintiff relies on 29 C.F.R. § 1601.12(b), which permits amendments that cure technical defects or omissions (including verification) and that clarify or amplify existing allegations to relate back to the date the original charge was first received.

### D. Inquiry Closure, Continued Efforts, and Alternative Equitable Tolling

17. Assuming the 300-day administrative charge-filing period applies, the calculated deadline for challenging the December 10, 2024 unpaid-leave decision was October 6, 2025.

18. The federal government shutdown beginning October 1, 2025, and ending November 12, 2025, overlapped the period immediately preceding that calculated deadline. During the shutdown, the EEOC's contingency plan provided for limited operations only. Nearly all staff were furloughed. The agency continued limited intake through its public portal and accepted mail to preserve rights, but it did not investigate charges, and staff were generally unavailable to respond to public inquiries, correspondence, or requests for assistance.

19. During the federal government shutdown that began on October 1, 2025, and continued until November 12, 2025, the EEOC implemented a contingency plan under which nearly all employees were furloughed. Only a minimal number of staff remained to perform the limited functions the agency designated as excepted. As a result, the EEOC did not investigate pending charges, did not process most administrative matters, and did not provide routine public assistance. Staff were generally unavailable to answer telephone calls, respond to written correspondence, or assist individuals seeking to file or complete a charge. Plaintiff does not contend that the government shutdown, standing alone, suspended the statutory filing period or excused the need for a timely charge.

20. Under ordinary circumstances, an individual may file a charge of discrimination with the EEOC through its public online portal, by mail, or, where available, by telephone or in-person appointment. Completing a charge typically requires access to the necessary forms or portal, the ability to prepare a written description of the allegations, and, in many cases, an opportunity to clarify information or obtain confirmation that a submission has been received and accepted. During the government shutdown that began on October 1, 2025, these ordinary channels were substantially impaired. Nearly all EEOC staff were furloughed, investigations and routine administrative processing stopped, and staff were generally unavailable to answer questions, schedule appointments, respond to correspondence, or assist with incomplete or rejected submissions.

21. During the relevant period, Plaintiff was unemployed, experiencing homelessness, residing in a homeless shelter, and receiving government assistance. Plaintiff lacked reliable access to a computer or other means of using the EEOC's electronic filing resources. These circumstances substantially limited the practical means available to prepare, transmit, or obtain assistance with a charge. Plaintiff does not claim that lack of computer access, homelessness, or interrupted benefits, without more, is sufficient for equitable tolling.

22. In the days immediately preceding the calculated October 6, 2025 deadline, the closed status of the inquiry, the absence of any response to Plaintiff's reopening requests, the shutdown's restriction on staff availability and ordinary filing support, and Plaintiff's lack of reliable computer access operated together to prevent completion and submission of a charge. These barriers were not abstract; they directly limited the realistic avenues available to Plaintiff during the final window before the deadline.

23. The combination of the shutdown's operational limitations and Plaintiff's access barriers materially impeded his ability to complete the administrative filing process before the calculated deadline. Plaintiff does not contend that the shutdown automatically suspended statutory deadlines or that an intake appointment was a legal prerequisite to filing a charge. He alleges that the practical effect of the limited operations, considered together with his homelessness,

unemployment, dependence on government assistance, which had been temporarily stopped due to government shutdown, and lack of computer access, restricted the avenues realistically available to him during the critical window.

24. Before the applicable administrative filing deadline expired, the EEOC closed Plaintiff's inquiry concerning the employment practices subsequently addressed in Charge No. 531-2025-03365. The closure occurred while time remained to file a charge. Plaintiff does not allege that the mere closure of an inquiry automatically tolls the filing deadline or converts an inquiry into a formal charge.

25. Plaintiff remained interested in pursuing his allegations and had not abandoned his effort to file a discrimination charge. After learning that the inquiry had been closed, Plaintiff attempted to contact the EEOC to request that it be reopened so that he could continue the filing process. Plaintiff received no response to those requests. Plaintiff was ready and willing to participate in an intake appointment but was not provided one.

26. Plaintiff's inquiry concerning the December 2024 unpaid leave and subsequent employment actions had already been closed by the EEOC while time remained to file. After learning of the closure, Plaintiff contacted the agency to request that the inquiry be reopened so he could continue the filing process. He received no response. He was ready and willing to participate in an intake appointment but was not given one. At the same time, he lacked reliable access to a computer or other means of using the EEOC's electronic portal, was unemployed and residing in a homeless shelter, and experienced an interruption in government assistance benefits because of the shutdown. These conditions limited his practical ability to prepare, transmit, or obtain assistance with a charge through the remaining channels.

27. The closure of the inquiry, followed by the absence of any response to Plaintiff's requests to reopen it and the lack of an appointment, created a practical obstacle to proceeding through the intake process. This obstacle occurred during the period of severely reduced agency operations and at a time when Plaintiff's access to electronic filing resources was limited. Plaintiff does not allege intentional deception merely from the fact of closure. He relies on the actual effect of the closure and subsequent non-responsiveness on his ability to proceed, considered together with the shutdown-related operational limitations and access barriers described above.

28. Plaintiff continued seeking to pursue his allegations notwithstanding the closure and the absence of a response to his reopening requests. Plaintiff subsequently submitted the Form 5A bearing the date October 31, 2025. After that submission, the EEOC reopened the matter. Plaintiff relies on his requests to reopen the inquiry and the subsequent Form 5A submission as evidence that he continued pursuing his allegations rather than abandoning them.

29. Plaintiff continued his efforts to pursue the allegations. On October 31, 2025—shortly after the calculated October 6, 2025 deadline—he submitted the Form 5A that led the EEOC to reopen the matter and assign Charge No. 531-2025-03365. The short interval between the calculated deadline and that submission, together with his prior requests to reopen the inquiry and his readiness to attend an appointment, reflects continued diligence rather than abandonment of the claim. Plaintiff alleges that the combination of the closed inquiry, the absence of any agency response, the shutdown's restriction of ordinary filing support, and his lack of computer access and stable housing prevented him from completing the administrative filing process before the calculated deadline.

30. Plaintiff has available, and will submit as appropriate, records reflecting his contacts with the EEOC concerning the inquiry, the closure of the inquiry, his requests that it be reopened, and the Form 5A submission dated October 31, 2025.

31. Plaintiff requests that administrative timeliness be determined using the actual content and receipt dates of his submissions and any applicable relation back. Plaintiff does not contend that every inquiry necessarily constitutes a charge or that reopening alone establishes timely filing.

32. Plaintiff alleges that the circumstances described above constitute extraordinary circumstances within the meaning of the governing authorities. The Supreme Court has held that the extraordinary-circumstances element of equitable tolling is satisfied only where the circumstances that caused the delay are both extraordinary and beyond the litigant's control. Menominee Indian Tribe of Wisconsin v. United States, 577 U.S. 250, 257 (2016). Those circumstances must also have stood in the way and prevented timely filing despite reasonable diligence. Holland v. Florida, 560 U.S. 631, 649 (2010). Black's Law Dictionary defines "extraordinary" as out of the ordinary, exceeding the usual or normal measure or degree, and not of a customary kind, and defines "extraordinary circumstances" as factors not usually associated with a particular event. Consistent with these authorities, the Second Circuit has explained that "extraordinary" refers to the severity of the obstacle impeding compliance with a limitations period. Harper v. Ercole, 648 F.3d 132, 137 (2d Cir. 2011). Plaintiff further alleges that the unemployment resulting from Defendant's challenged employment actions limited his practical ability to pursue the administrative process during the critical period. The government shutdown that began on October 1, 2025, also interfered with resources and assistance ordinarily available to unemployed and homeless individuals, including temporary interruptions in government assistance benefits. Plaintiff does not contend that unemployment or the interruption of assistance, standing alone, establishes equitable tolling. He relies on these conditions only as part of the combined circumstances—together with the closed inquiry, the absence of any agency response, the shutdown's restriction on ordinary EEOC filing support, and the lack of reliable computer access—that restricted the realistic means available to complete and submit a charge before the calculated deadline. Plaintiff relies on the combined effect of these circumstances as conditions that were both extraordinary and beyond his control and that prevented timely filing.

33. Alternatively, Plaintiff requests equitable tolling for the period during which the agency's handling of his inquiry, the shutdown's operational limitations, and the access barriers alleged above, considered in combination, prevented timely filing despite reasonable diligence. Plaintiff relies on the combined circumstances and their causal connection to the delay, rather than on the shutdown, financial hardship, lack of computer access, lack of an appointment, or inquiry closure alone. The short period between the calculated deadline and the Form 5A submission, together with Plaintiff's documented continued efforts, supports a finding that the delay was limited and that Plaintiff acted with diligence once practical means became available. Plaintiff relies only on the combined effect of the circumstances described above and does not assert that any single factor independently establishes timeliness.

34. In the alternative, Plaintiff asserts that timeliness should be determined under any one or more of the following: (a) relation back of later submissions to the date an earlier qualifying written charge or inquiry was first received, pursuant to 29 C.F.R. § 1601.12(b); (b) equitable tolling based on the combined effect of the inquiry closure, non-responsiveness, shutdown-related operational limitations, and access barriers alleged herein; and (c) separate evaluation of

the administrative timeliness of the later employment-transition and layoff decisions according to the dates those decisions were made and communicated.

35. Plaintiff separately challenges the later employment-transition and layoff decisions. Their administrative timeliness must be evaluated using the dates those decisions were made and communicated, rather than automatically assigning every later decision the date December 10, 2024. Plaintiff does not contend that the continuing financial consequences of an earlier discrete employment decision, standing alone, restart the administrative filing period for that earlier decision.

36. Plaintiff's allegations concerning administrative timeliness are made in the alternative and are subject to the actual content, dates, and legal effect of the submissions and agency actions as determined by the evidence. Plaintiff does not seek to expand the scope of the charges beyond what was presented to the EEOC or to assert that every employment decision after December 10, 2024 is automatically timely.

37. Plaintiff received the EEOC's Determination and Notice of Rights for both charges on July 31, 2026, and filed this action within ninety days of receipt.

38. Plaintiff's claims under 42 U.S.C. § 1981 do not require EEOC exhaustion.

## V. Factual Allegations

### A. Employment and Performance

39. Plaintiff began working for Defendant on approximately July 7, 2024, as a Food Service Worker at approximately 6107 10th Cavalry Avenue, F.E. Warren Air Force Base, Wyoming 82005.

40. His duties included dishwashing, cleaning the dining and kitchen areas, cleaning restrooms, and assisting with food-service operations. He worked various shifts, covered shifts for coworkers, and performed his duties satisfactorily.

41. Plaintiff's supervisor was known to him as Buddy, a white male. Other employees involved in the events below were known as Jay (a white male), Omar (a black male whose national origin Plaintiff does not know), and Aaron (a white male).

### B. Protected Complaints and Context

42. In approximately August 2024, Plaintiff experienced aggressive and belittling conduct by Jay, the lead dishwasher. Plaintiff complained to Buddy on approximately August 6, 2024. Buddy acknowledged that others had complained about Jay and said he would address it. Hostility continued.

43. On approximately December 3, 2024, Plaintiff complained to Defendant's Human Resources personnel about discrimination and a hostile work environment. Plaintiff reasonably and in good faith believed the treatment he described was unlawful race and color discrimination. Defendant received and understood the complaint as opposition to discrimination.

A true and correct copy of Plaintiff's written complaint to Human Resources dated approximately October 2, 2024, is attached as Exhibit E.

## C. October 2, 2024 Incident and October 9, 2024 Discipline

44. On approximately October 2, 2024, Plaintiff returned to a dishwashing shift after covering another employee's shift for about one month. Defendant used a seniority system for work assignments and task allocation. Plaintiff had greater seniority than the two other Food Service Workers on the shift. When the volume of dishes did not require three workers, he performed other necessary cleaning and preparation tasks consistent with that seniority system.

45. Aaron, a white male, told Omar that Plaintiff would not help him wash dishes. Omar, a black male, then approached Plaintiff aggressively and demanded that Plaintiff help Aaron wash dishes, rather than assisting Aaron himself. Omar frequently took breaks and was taking another break at the time. Plaintiff attempted to de-escalate and denies threatening Omar. He was performing other necessary cleaning and preparation tasks so that all work would be completed on time. Plaintiff believed that Aaron and Omar were conspiring to get him fired. Plaintiff further believes that Aaron, a white male, instigated the conflict in order to cause a dispute in the workplace between two persons who could be seen as being of the same African American race. Omar and Plaintiff were the only ones who could be seen to be of the same African American race who were hired in this role by Defendant. Aaron then reported to Buddy, a white male, that Plaintiff had threatened Omar.

46. Buddy directed Plaintiff to clock out and sent him home for the remainder of the shift and until further notice. Buddy also referenced earlier complaints about Plaintiff that had never been disclosed to him. Plaintiff requested review of available surveillance footage, which he believed would show the circumstances of the confrontation and his work performance. Defendant did not meaningfully obtain Plaintiff's account or review the footage before taking action.

47. Buddy credited Aaron's report alone. Aaron was the last hired employee in the matter and did not have seniority over Plaintiff. Buddy took this action without reviewing available surveillance footage and without considering Plaintiff's greater seniority or satisfactory work history. Plaintiff had a separate employment relationship with Defendant from Aaron and Omar.

48. Plaintiff prepared a written account and complained to Human Resources. The other workers involved in the confrontation did not receive the same treatment. Plaintiff believes employees outside his protected racial class received more favorable treatment in the administration of discipline.

49. Defendant permitted Plaintiff to return on approximately October 9, 2024. He was required to sign disciplinary paperwork that he understood placed him on final notice. The paperwork contained a mark indicating a second warning even though he had not previously received a written warning. Plaintiff disputed the underlying allegations.

50. Additional conflict over task allocation occurred on October 9. Plaintiff again sought assistance and requested review of surveillance footage. He documented these matters in a written statement to Human Resources dated October 11, 2024.

A true and correct copy of Plaintiff's written complaint to Human Resources dated approximately October 2, 2024, is attached as Exhibit E.

A true and correct copy of Plaintiff's written statement to Human Resources dated October 11, 2024, is attached as Exhibit F.

A true and correct copy of Plaintiff's written complaint to Human Resources dated December 3, 2024, is attached as Exhibit G.

### D. December 10, 2024 Unpaid Leave and Subsequent Exclusion from Employment Transition

51. Approximately one week after Plaintiff's December 3, 2024 discrimination complaint, Defendant placed him on involuntary unpaid leave on approximately December 10, 2024.

52. Buddy sent Plaintiff a letter placing him on unpaid administrative leave and notified Defendant's corporate office of the leave. Buddy most likely learned of the bench warrant after Plaintiff called out of work. The bench warrant was served on Plaintiff at the courthouse at the same time it was issued to the responding police, who had not yet received it from the police department. The warrant was issued while Plaintiff was at the courthouse, and he was not able to meet with the city judge at that time. Plaintiff's presence at the courthouse shows that he was concerned about the matter and worked diligently to resolve it. He later discovered that the situation resulted from an error in communication from the court. These facts establish reason to believe that the incident was not a matter affecting Plaintiff's employment. Plaintiff would not have been placed on unpaid leave had he not been responsible enough to contact his employer to call out.

53. Defendant associated the leave with a bench warrant arising from Plaintiff's failure to appear for a court date scheduled for approximately December 4, 2024. The underlying court matter did not arise from Plaintiff's employment. Plaintiff alleges he had not received paperwork notifying him of the court date. The underlying case was later dismissed.

54. Plaintiff alleges that Defendant used these circumstances as a pretext for racial discrimination and retaliation. Supporting circumstances include the close temporal proximity to his protected complaint, the earlier disputed discipline, his satisfactory performance, Defendant's failure to conduct a meaningful investigation, and the subsequent handling of his employment transition. Plaintiff does not contend that Defendant was categorically prohibited from considering an employee's unrelated legal matter; he alleges that the stated reason was a pretext for discrimination and retaliation under the circumstances described.

55. According to the employment handbook and policies Defendant provided to Plaintiff, there was no stated policy that authorized involuntary unpaid leave solely because of a bench warrant for missing a court date. The handbook and policies did not provide for such leave unless the employee was involved in an incident that required it or some other extreme circumstance outside of work made the employee unsafe for the work environment. Plaintiff alleges that he was entitled to be treated as innocent until proven guilty for any offense arising outside of work, except in extreme circumstances. A bench warrant for failure to appear for a court date within a legal proceeding did not constitute an extreme circumstance under Defendant's policies and did not justify the unpaid leave imposed on Plaintiff.

56. After placing Plaintiff on unpaid leave, Defendant arranged for a subcontractor identified to Plaintiff as ServTech to take over dishwashing and cleaning functions. Buddy gave Plaintiff

instructions concerning the transition. Plaintiff followed those instructions and expected to receive an offer letter. He did not.

57. Defendant excluded Plaintiff from the transition and he was laid off without receiving the anticipated transfer opportunity. These events occurred after the December 10 leave decision and during the period ending approximately February 1, 2025. Plaintiff remained willing to work. The denial of the transition opportunity was not based on deficient performance.

58. Plaintiff challenges Defendant's own actions in administering the transition and excluding him from continued employment. He does not seek an order requiring a nonparty subcontractor to hire him.

59. Defendant held a for-profit federal government contract at the worksite. Defendant was aware that Plaintiff was living at the local shelter. Federal and state funding supports the shelter program in which Plaintiff participated.

### E. Resulting Harm

60. Plaintiff lost wages from the later unpaid leave and loss of employment. He was living in a shelter during the relevant events, a circumstance known to Defendant. The loss of income contributed to the loss of his shelter bed. He also experienced emotional distress, humiliation, and disruption of his efforts to maintain employment and housing.

61. Plaintiff was fortunate to have been accepted into a strict program at a local shelter. The program required him to remain employed and on track to save money in order to become reinstated into independent housing. Continued participation in the program, and the ability to remain at the shelter for the permitted period, depended on meeting these employment and savings requirements.

62. After being placed on unpaid leave, Plaintiff risked losing his shelter bed due to lack of income. Following his layoff, he was displaced and forced to seek shelter as a homeless individual during a Wyoming winter. Awareness that other shelter residents had lost limbs, fingers, and toes to frostbite in similar conditions increased his stress, and concurrent funding cutbacks prevented the shelter from continuing to accommodate him.

## VI. Count One

**Title VII — Race and Color Discrimination**

**42 U.S.C. § 2000e-2(a)**

63. Plaintiff incorporates paragraphs 1–62.

64. Plaintiff is African American and is protected from discrimination on the basis of race and color under Title VII.

65. Defendant subjected Plaintiff to adverse employment actions, including the October 2024 discipline, involuntary unpaid leave, exclusion from the employment transition, and resulting loss of employment.

66. Race was a motivating factor in the challenged decisions. Color was a motivating factor in the later decisions addressed in the second EEOC charge.

67. Supporting circumstances include disparate treatment of Plaintiff compared with the other workers involved in the October 2 incident, reliance on previously undisclosed complaints, failure to review requested surveillance footage or meaningfully investigate, and subsequent exclusion from the employment transition despite Plaintiff's compliance with management instructions and satisfactory performance. Plaintiff further alleges that Defendant's decision to credit the report of a white coworker who was the last hired and who lacked seniority, without reviewing available surveillance footage or considering Plaintiff's greater seniority and satisfactory work history, and without conducting an investigation into the conflicting accounts among employees under separate employment relationships, was a race-based choice. In the interaction among the three employees' separate employment relationships, Plaintiff was subjected to adverse action based on the unexamined report of a white coworker who was the last hired. Plaintiff further alleges that Defendant held a for-profit federal government contract at the worksite and was aware that Plaintiff was living at the local shelter. Federal and state funding provided to homeless shelters is intended to assist individuals in circumstances similar to Plaintiff's in becoming sufficiently productive in the economy to regain independent housing. Government contracts require strict adherence to public law prohibiting race-based discrimination and retaliation. Defendant did not consistently ensure the same opportunities for continued gainful employment to employees in the protected class, or to employees housed in a homeless shelter whose program was connected to federal and state government funding.

68. Defendant's stated reasons were pretextual. The discrimination caused Plaintiff economic and noneconomic harm.

69. This count is pleaded in the alternative and is subject to the timeliness and exhaustion principles addressed in Section IV.

## VII. Count Two

**Title VII — Retaliation**

**42 U.S.C. § 2000e-3(a)**

70. Plaintiff incorporates paragraphs 1–62.

71. On approximately December 3, 2024, Plaintiff engaged in protected opposition activity by complaining to Human Resources about discrimination and a hostile work environment. He reasonably and in good faith believed the treatment involved unlawful employment discrimination.

72. Defendant knew of the protected activity. Approximately one week later, on December 10, 2024, Defendant placed Plaintiff on involuntary unpaid leave and subsequently excluded him from the employment transition, resulting in the loss of his employment.

73. These actions were materially adverse and would dissuade a reasonable employee from making or supporting a discrimination complaint.

74. Plaintiff alleges that, but for his protected opposition, Defendant would not have taken the challenged actions. The very short temporal proximity, combined with the earlier disputed discipline, failure to investigate, and subsequent exclusion from the transition, supports an inference of retaliatory causation.

75. Defendant's retaliation caused Plaintiff economic and noneconomic harm.

76. This count is pleaded in the alternative and is subject to the timeliness and exhaustion principles addressed in Section IV.

## VIII. Count Three

**Section 1981 — Race Discrimination**

**42 U.S.C. § 1981**

77. Plaintiff incorporates paragraphs 1–62.

78. Plaintiff had a contractual employment relationship with Defendant under which he performed work in exchange for wages and benefits. Section 1981 protected his equal right to perform that relationship and enjoy its benefits, privileges, terms, and conditions free from intentional racial discrimination.

79. Defendant intentionally impaired those rights through the October 2024 discipline, involuntary unpaid leave, and exclusion from continued employment alleged above.

80. Plaintiff alleges that, but for his race, Defendant would not have subjected him to the challenged treatment. Supporting circumstances include the disparate treatment, failure to investigate, and pretextual use of the unrelated court matter and transition process. Plaintiff further alleges that Defendant's decision to credit the report of a white coworker who was the last hired and who lacked seniority, without reviewing available surveillance footage or considering Plaintiff's greater seniority and satisfactory work history, and without conducting an investigation into the conflicting accounts among employees under separate employment relationships, was a race-based choice. In the interaction among the three employees' separate employment relationships, Plaintiff was subjected to adverse action based on the unexamined report of a white coworker who was the last hired. Plaintiff further alleges that Defendant held a for-profit federal government contract at the worksite and was aware that Plaintiff was living at the local shelter. Federal and state funding provided to homeless shelters is intended to assist individuals in circumstances similar to Plaintiff's in becoming sufficiently productive in the economy to regain independent housing. Government contracts require strict adherence to public law prohibiting race-based discrimination and retaliation. Defendant did not consistently ensure the same opportunities for continued gainful employment to employees in the protected class, or to employees housed in a homeless shelter whose program was connected to federal and state government funding.

81. Defendant's conduct caused lost wages, lost benefits and opportunities, emotional distress, and other damages.

82. This count is pleaded in the alternative and is subject to the principles addressed in Section IV to the extent applicable.

## IX. Count Four

**Section 1981 — Retaliation**

**42 U.S.C. § 1981**

83. Plaintiff incorporates paragraphs 1–62.

84. Plaintiff's December 3, 2024 Human Resources complaint opposed what he reasonably and in good faith believed was racial discrimination affecting his contractual employment rights. Defendant knew of the opposition.

85. Defendant retaliated by placing Plaintiff on involuntary unpaid leave on approximately December 10, 2024, and subsequently excluding him from the employment transition, resulting in the loss of his employment.

86. Plaintiff alleges that, but for his opposition to racial discrimination, Defendant would not have taken those actions. The close timing and surrounding circumstances support an inference of retaliatory causation.

87. Defendant's actions impaired Plaintiff's enjoyment of his contractual employment rights and caused economic and noneconomic harm.

88. This count is pleaded in the alternative and is subject to the principles addressed in Section IV to the extent applicable.

## X. Request for Relief

WHEREFORE, Plaintiff respectfully requests judgment against Defendant and the following relief:

A. A determination that Defendant violated Title VII and 42 U.S.C. § 1981;

B. Back pay, including lost wages and the value of lost employment benefits, subject to applicable limitations, offsets, and mitigation;

C. Reinstatement to an appropriate position within Defendant's control, if feasible, or front pay in lieu of reinstatement;

D. Correction or removal of discriminatory or retaliatory disciplinary entries from Plaintiff's employment records;

E. Compensatory damages for emotional distress, humiliation, and other recoverable noneconomic injuries;

F. Compensation for other proven economic losses legally attributable to Defendant's unlawful conduct;

G. Punitive damages to the extent the evidence establishes the applicable standard;

H. Prejudgment and postjudgment interest where authorized;

I. Taxable costs and, if Plaintiff later retains counsel, reasonable attorney's fees to the extent authorized by law (Plaintiff does not request attorney's fees for his own pro se work);

J. Other appropriate equitable relief directed to Defendant and supported by the evidence; and

K. Such other relief as the Court determines just and proper.

Plaintiff requests a single recovery for each injury and does not seek duplicative damages under overlapping claims.

Exhibits

Exhibit A — EEOC Form 5A, Charge No. 541-2025-02233

Exhibit B — EEOC Form 5A, Charge No. 531-2025-03365

Exhibit C — Notice of Right to Sue, Charge No. 541-2025-02233

Exhibit D — Notice of Right to Sue, Charge No. 531-2025-03365

Exhibit E — Written complaint to Human Resources (approximately October 2, 2024)

Exhibit F — Written statement to Human Resources (October 11, 2024)

Exhibit G — Written complaint to Human Resources (December 3, 2024)

## XI. Jury Demand

Plaintiff demands a trial by jury on all issues triable by jury under Federal Rule of Civil Procedure 38 and applicable law.

Dated this 29th Day of October 2026.

Respectfully submitted,

Joseph Fain, Plaintiff Pro Se

P.O. Box 80

Evanston, Wyoming 82931